| | | |
|---|---|---|
| UNITED STATES DISTRICT COURT | | SOUTHERN DISTRICT OF TEXAS |

Keryl Douglas, §
§
      Plaintiff, §
§
versus §      Civil Action H-11-1647
§
Houston Housing Authority, et al., §
§
      Defendants. §

## Opinion on Dismissal and Sanctions

1. *Introduction.*

    Keryl Douglas has filed a 71-page complaint covering more than twenty years of her work and personal life. She describes an amorphous conspiracy between the city of Houston and the United States. Her action mentions a member of the United States Congress and several leaders of the NAACP.

    Douglas is a licensed attorney in Texas. She has chosen to represent herself. A lawyer who represents herself is not allowed the marginal leniency that courts afford litigants without lawyers. Because her complaint fails to state a claim, it will be dismissed with prejudice.

2. *The Cases.*

    This is the fourth lawsuit involving Douglas. On April 2, 2010, Ernie Etuk, the executive director of the Houston Housing Authority, sued Douglas for defamation after she told the press that he had sexually harassed employees at the agency. Douglas did not counterclaim, and Etuk later voluntarily dismissed the case.

    On May 3, 2010 – while Etuk's suit was still pending – Douglas sued him and the Houston Housing Authority for wrongful termination, retaliation, negligent retention, sexual harassment, race discrimination, and intentional infliction of emotional distress. She said they had punished her for complaining to the Department of Housing and Urban Development about mismanagement at the local agency. The judge dismissed the case because Douglas (a) sued beyond the limitation under the Texas Labor Code and (b) sued immune defendants.

Despite being forbidden as a vexatious litigator to sue on the facts in this case, Douglas again sued Etuk and the Houston Housing Authority on May 8, 2012, for employment discrimination and sexual harassment under the Texas Labor Code. Her case was dismissed by the 281st District Court, and it is on appeal to the First Court of Appeals of Texas.

3.  *The Parties.*

In April of 2011, Douglas brought this suit. She has again sued the Houston Housing Authority and Etuk plus seventeen others. She has pleaded 20 legal theories and seeks more than four million dollars.

From the Houston Housing Authority she has sued: (1) Marilyn Allen – Director of Human Resources; (2) Horace Allison – Senior Vice President; (3) Chetana Chafekar – a financial officer; (4) Myron Cloyd – a commissioner; (5) David Feldman – an outside lawyer; (6) David Mincberg – a commissioner; (7) Rick Morris – an outside lawyer; (8) Tim Seckinger – former chief executive and chair of the commission; (9) Dennis Spellman – a worker; and (10) Ken Wood – a worker.

From Houston generally, she has sued: (1) the city of Houston; (2) Quanell X – an active citizen; (3) Al Green – Congressman for the 9th District; (4) Benjamin Hall – a lawyer; (5) Howard Jefferson – with the NAACP; and (6) the Reverend Bill Lawson.

4.  *The Claims.*

Of her 20 claims, seven are discernable legal theories; twelve are rambling, semi-coherent descriptions of her messy personal and work life. Douglas says an amorphous cluster of people who were associated with her life – their friends and lawyers – have conspired against her for complaining about their misconduct. Without connecting specific acts to a particular person among the defendants, she complains that they are an illegal conspiracy that harasses her by:

- Intercepting e-mail messages she sent while at the agency;
- Destroying and hiding agency records from her;
- Stalking her by having police follow her;
- Tricking her into disclosing her grievances before her case was filed;
- Invading her privacy by having a man park outside of her house;
- Defaming her by saying that she was fired from the NAACP; and
- Maliciously suing her in retaliation for her complaining about the agency.

5. *Nearly Clear Claims.*

Douglas complains that her e-mail messages were intercepted. She knows this because people other than the intended recipient knew the message's content. Her theory is: Knowledge by A of something she said in an e-mail to B evinces an illegal interception. She does not account for her addressee's having forwarded the messages or having told third-parties – orally or in writing. She has no defendant whom she claims intercepted a message. Assuming that someone at the authority did read, forward, print and share or otherwise get and publish her messages at the authority, it is not actionable; she has no damage, and she was using its time and equipment.

Douglas says that, when somebody destroyed records at the authority, she could not complain effectively about its mal-administration. She has assumed the incriminating records ever existed, and she knows nothing about who destroyed them or when they did it. She may not sue for somebody's interfering with her investigation of a government agency.[1] The agency has no obligation to disclose or deliver its records to her – except under the acts about freedom of information; violating those acts is its own claim, not a conspiracy.[2] If her formal requests for records is denied, Douglas's only recourse is through an administrative appeal and, then when it has been completed, to appeal to the court. None of the correct procedures includes suing particular workers who may have had something to do with the records.

Douglas says police and investigators intimidated her when they waited on the public street near her house. She has disclaimed that these furtive figures stepped on her land. Her description is an abstraction of her feelings. No fact in her narrative would lead a reasonable person to feel intimidated. Douglas says that the defendants have made her fear for her life and have crippled her career. A undifferentiated sense of injustice and generalized fear are not the predicate for a legal action against 17 people.

Douglas says Al Green told Etuk the nature of her complaints before she sued. She seems to think that Green only pretended interest in her problems to report them to Etuk. Assuming her supposition to be true, she has no claim that her gossip was repeated. When she told Green, she risked that he would tell whomever he wanted.

---

[1] Tufts v. Department of Air Force, 793 F.2d 259, 261-62 (10th Cir. 1986).

[2] 5 U.S.C. § 552 (2006).

Douglas complains that people slandered her by saying she was fired from the NAACP. She has no support for what was precisely said, who said this, to whom it was said, when it was said, how it was false, or how it injured her. Because she cannot plead an identifiable time of an instance of publication about a 1998 firing, she cannot show that her claim is within the one-year limitations period.[3]

She has sued her opposing counsel in the earlier cases. Absent phenomenally extraordinary circumstances that are not present here, a party may not sue opposing counsel of a suit for actions in its pendency.[4] Courts possess contempt powers to deal with lawyer misconduct during a case, not in a collateral attack after the fact. Douglas may not like what the other lawyers do or say about her in court, but she has to accept the friction of litigation like everyone else.

6.  *The Rest.*

Douglas's suit has no basis in law or fact. She asserts abstract conclusions about a general conspiracy among people at the Houston Housing Authority, Houston, and the NAACP – along with their friends and lawyers. The conspiracy was to do all of those other things, with no specific allegations about a particular agreement among any of them to commit an illegal act.

Douglas is upset at how her life has been going. Her failures, she argues, are entirely attributable to the ill will of . . . well, somebody. She may not assuage her frustrations using the court in a malicious and deranged attack on everyone she imagines may have wronged her.

During a three-hour hearing, she was incapable of articulating a legal theory or legal injury that she has suffered. Her explanations disclosed a profound misapprehension of common law, state and federal statutes, and procedure.

---

[3] Tex. Civ. Prac. & Rem. Code § 16.002(a) (2006).

[4] Kruegel v. Murphy, 126 S.W. 343, 345 (Tex. Ct. App. – Dallas 1910, writ ref'd) ("The attorneys [may] practice their profession . . . without making themselves liable for damages."); Lewis v. American Exploration Co., 4 F. Supp.2d. 673, 679-80 (S.D. Tex. 1998); White v. Bayless, 32 S.W.3d 271 (Tex. Ct. App. – San Antonio 2000).

7.     *Sanctions.*

Douglas has divided 20 years of her confused life into three tormented lawsuits. Her complaints are nothing but a *cri de coeur* to air grievances against ex-employers, ex-colleagues, ex-lovers, and opposing counsel. This is exemplified by her circulating her most recent case around the city and submitting materials to state and federal agencies with the same sordid and nonsensical facts.

She has used this lawsuit to inflict embarrassment and expense on the defendants and on the people of Houston. Douglas is sanctioned $4,200 for this abusive case because she refuses to appreciate the severity of the harm she has done. At Green's suggestion, the money will be donated to metropolitan collections in the Julia Ideson Building of the Houston Public Library.

Douglas argues that she cannot be sanctioned because she was not given the benefit of the twenty-one-day opportunity in Rule 11 to withdraw her offending pleading. Sanctions issued by the court on its own initiative have no 21-day grace.[5] She now has had the passage of almost one year to withdraw her pleadings, and she has not recanted a word. Instead of reorienting herself to the proper role of litigation and doing the work required, she has continued to file similar papers.

8.     *Relief from Judgment.*

After the hearing, Douglas moved for relief from judgment and stay of enforcement. She says that she lacked notice of the court's intent to discuss her claims, the court is biased, the court interfered with her state-court litigation, and the court never entered a final judgment. These arguments are the same reasons she says the court should recuse itself.

Douglas says she was not given notice of the court's intention to discuss her claim. A prepared attorney would have expected to discuss the three pending motions to dismiss. The rules require her to do a thorough investigation of the facts before suing. The court's scheduling order also said that "the court will decide motions, narrow issues, and inquire about and resolve expected motions, and schedule discovery."

---

[5] Fed. R. C. Pro. 11(c)(2); In re Pennie & Edmonds LLP, 323 F.3d 86, 91 (2d Cir. 2003).

7.     *Sanctions.*

Douglas has divided 20 years of her confused life into three tormented lawsuits. Her complaints are nothing but a *cri de coeur* to air grievances against ex-employers, ex-colleagues, ex-lovers, and opposing counsel. This is exemplified by her circulating her most recent case around the city and submitting materials to state and federal agencies with the same sordid and nonsensical facts.

She has used this lawsuit to inflict embarrassment and expense on the defendants and on the people of Houston. Douglas is sanctioned $4,200 for this abusive case because she refuses to appreciate the severity of the harm she has done. At Green's suggestion, the money will be donated to metropolitan collections in the Julia Ideson Building of the Houston Public Library.

Douglas argues that she cannot be sanctioned because she was not given the benefit of the twenty-one-day opportunity in Rule 11 to withdraw her offending pleading. Sanctions issued by the court on its own initiative have no 21-day grace.[5] She now has had the passage of almost one year to withdraw her pleadings, and she has not recanted a word. Instead of reorienting herself to the proper role of litigation and doing the work required, she has continued to file similar papers.

8.     *Relief from Judgment.*

After the hearing, Douglas moved for relief from judgment and stay of enforcement. She says that she lacked notice of the court's intent to discuss her claims, the court is biased, the court interfered with her state-court litigation, and the court never entered a final judgment. These arguments are the same reasons she says the court should recuse itself.

Douglas says she was not given notice of the court's intention to discuss her claim. A prepared attorney would have expected to discuss the three pending motions to dismiss. The rules require her to do a thorough investigation of the facts before suing. The court's scheduling order also said that "the court will decide motions, narrow issues, and inquire about and resolve expected motions, and schedule discovery."

---

[5] Fed. R. C. Pro. 11(c)(2); In re Pennie & Edmonds LLP, 323 F.3d 86, 91 (2d Cir. 2003).

Douglas complains that the court is biased and argued for the defendants. She misconstrues the court's rigorous questioning of her claims as personal hostility. In reality, the court was animated by its duty to resolve disputes and do it swiftly and justly.

Other arguments in Douglas's motion for relief from judgment are not grounds for reconsideration of the judgment. The court disposed of them in its opinion on recusal where they may have been relevant. Douglas's motion for relief from judgment will be denied.

9. *Conclusion.*

Keryl Douglas's claims will be dismissed with prejudice for failure to state a claim. She is sanctioned $4,200 for the attorneys' fees and costs incurred by the defendants.

Signed on December 9, 2012, at Houston, Texas.

---

Lynn N. Hughes
United States District Judge